836 A.2d 36

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Ronald HANIBLE, Appellant.**

Supreme Court of Pennsylvania.

Submitted Aug. 27, 2003.

Decided Nov. 19, 2003.

David Scott Rudenstein, Philadelphia, for Ronald Hanible.

Hugh J. Burns, Philadelphia, Amy Zapp, Harrisburg, for Com.

Before CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and LAMB, JJ.

## OPINION

Justice NIGRO.

Following a jury trial, Appellant Ronald Hanible was found guilty of first-degree murder for the killing of Milton Wise.[1] After finding two aggravating circumstances[2] and no mitigat-

---

**1.** The jury also found Appellant guilty of robbery, possession of an instrument of a crime ("PIC"), and second-degree murder for the killing of Rodney Walters.

**2.** Specifically, the jury found that Appellant committed the murder while in the perpetration of a robbery, *see* 42 Pa.C.S. § 9711(d)(6), and

ing circumstances during the penalty phase, the jury returned a verdict of death. On June 13, 2001, the trial court formally imposed the death sentence.[3] This direct appeal followed, and for the reasons outlined below, we affirm the judgment of sentence.[4]

Appellant initially claims that there was insufficient evidence to support the jury's verdict of first-degree murder.[5] In reviewing such a claim, we must view the evidence admitted at trial, and all reasonable inferences drawn therefrom, in the light most favorable to the Commonwealth as the verdict winner, to determine whether the jury could have found every element of the offense beyond a reasonable doubt. *Commonwealth v. Spotz*, 552 Pa. 499, 716 A.2d 580, 583 (1998). Evidence is sufficient to sustain a conviction for first-degree murder where the Commonwealth establishes that the defendant unlawfully killed another human being, that the defendant acted with a specific intent to kill, and that the killing was willful, deliberate, and premeditated. 18 Pa.C.S. § 2502(d); *Spotz*, 716 A.2d at 583. A specific intent to kill may be proven wholly by circumstantial evidence, and may therefore be inferred from the defendant's use of a weapon on a vital part of the victim's body. *Commonwealth v. Bond*, 539 Pa. 299, 652 A.2d 308, 311 (1995).

The record below establishes that on January 15, 1999, Appellant was wearing a black ski hat pulled low on his head

that Appellant had been convicted of another murder, *see* 42 Pa.C.S. § 9711(d)(11).

3. The trial court also sentenced Appellant to life imprisonment for the second-degree murder conviction, ten to twenty years of imprisonment for the robbery conviction, and one to two years of imprisonment for the PIC conviction, all to run consecutively to Appellant's death sentence.

4. Pursuant to 42 Pa.C.S. § 9711(h), this Court has automatic jurisdiction to review a judgment of a sentence of death.

5. We note that even if Appellant had not raised a sufficiency of the evidence claim regarding his first-degree murder conviction, we would nevertheless be required to independently review the record to determine whether the Commonwealth established the elements necessary to sustain Appellant's conviction, given that Appellant has been sentenced to death. *See Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937, 942 n. 3 (1982).

and black sunglasses, and unexpectedly visited the home of his aunt, Catherine McCants. While there, Appellant repeatedly checked the time. Fifteen minutes later, Appellant left the home and walked to an intersection where he came across Eric Wiley, Catherine McCants' godson. As Appellant and Wiley walked together, Appellant reiterated his plan, which he had told Wiley about a few days earlier, to rob Milton Wise and Rodney Walters because they "ran numbers" and would have cash. N.T., 3/5/01, at 106. After Wiley told Appellant that he did not want to partake in the plan, Appellant replied, "I'll do it without you." N.T., 3/5/01, at 111. Wiley then left Appellant and headed for McCants' house. As he did so, Wiley saw Appellant standing in front of a vacant lot and he believed, but could not be sure, that he saw Wise and Walters standing in front of a pool hall on the opposite side of the street.

Wiley briefly visited McCants at her home. As Wiley was leaving and about to open the storm door, he heard two gunshots fired. Wiley saw Appellant standing over Wise, with a gun pointed at him as he lay on the ground, and then saw Walters run to Wise's aid. Although Wiley did not see what happened next, other witnesses heard two gunshots and then saw Walters fall to the ground with his hands on his stomach. The police arrived at the scene, and Wiley gave a statement to the police describing the events as delineated above. The police also found a black ski hat and a pair of dark sunglasses at the crime scene, which were identified as the same hat and sunglasses worn by Appellant just prior to the shooting.

A few days later, Appellant was arrested and charged with, *inter alia,* the murder of Wise. At Appellant's trial, the medical examiner testified that Wise died of a single gunshot wound to his left chest. McCants and her daughter-in-law also testified, placing Appellant at the scene of the crime near the time of the killings. Wiley took the stand as well, but he denied the veracity of the statement that he had made to police at the time of the shootings, asserting instead that the police had forced him to sign the statement by telling him that he would be held accountable for the murders unless he made

a statement implicating Appellant. The Commonwealth then admitted relevant portions of the statement Wiley had made to police into evidence.

Given this record, we agree with the trial court that there was sufficient evidence presented at trial from which the jury could have concluded that Appellant deliberately fired a shot into Wise's chest, a vital part of the body, and that the gunshot caused Wise's death. *See Bond,* 652 A.2d at 310–311 (evidence was sufficient to establish first-degree murder where defendant deliberately fired a fatal shot into the victim's chest from close range).

Appellant argues, however, that the evidence was not sufficient to sustain his first-degree murder conviction because the conviction was based primarily on Wiley's statement to the police, which Wiley subsequently recanted at trial. Contrary to Appellant's assertion, the mere fact that Wiley recanted a statement he had previously made to the police certainly does not render the evidence insufficient to support Appellant's conviction. Rather, the jury was free to evaluate both Wiley's statement to police as well as his testimony at trial recanting that statement, and free to believe all, part, or none of the evidence. *See Commonwealth v. Pitts,* 486 Pa. 212, 404 A.2d 1305 (1979) (jury is free to believe all, part or none of the evidence presented). It is not for this Court to reweigh the evidence and substitute its judgment for that of the fact-finder. *See Commonwealth v. Gibson,* 553 Pa. 648, 720 A.2d 473, 480 (1998) ("Credibility determinations are strictly within the province of the finder of fact; therefore, an appellate court may not reweigh the evidence and substitute its judgment for that of the finder of fact."). Moreover, in making his claim, Appellant ignores the additional circumstantial evidence that pointed to him as the killer, including the testimony of several other individuals that placed him at the scene of the crime near the time of the shooting, as well as the fact that his personal effects were found at the crime scene. Thus, Appellant's claim that the evidence was insufficient to support his first-degree murder conviction fails.

 In his second claim, Appellant argues that he should be granted a new trial because the verdict was against the weight of the evidence.[6] However, given the evidence as outlined above, including Wiley's statement to police, eyewitness testimony placing Appellant at the crime scene, and the presence of Appellant's personal effects at the scene, it certainly cannot be said that the jury's verdict shocks one's sense of justice. *Commonwealth v. Brown*, 538 Pa. 410, 648 A.2d 1177, 1189 (1994) (this Court may only reverse the jury's verdict on the basis that it is against the weight of the evidence if that verdict is "so contrary to the evidence as to shock one's sense of justice").

 In his final claim, Appellant argues that he is entitled to a new penalty hearing because the trial court committed reversible error when it failed to instruct the jury on the mitigating circumstance that Appellant had no significant history of prior criminal convictions. We disagree.

After the jury returned its guilty verdict on a Friday afternoon, there was a brief discussion between the trial court, the prosecutor, and Appellant's counsel regarding what aggravating and mitigating circumstances counsel were considering to use in the penalty phase. The prosecutor told the trial court that she wished to present as an aggravator that Appellant had a significant history of felony convictions involving the use or threat of violence to the person. *See* 42 Pa.C.S. § 9711(d)(9) (listing a defendant's "significant history of felony convictions involving the use or threat of violence to the person" as an aggravating circumstance). In response, defense counsel told the court that he was "going to argue that there is a lack of significant history" as a mitigating circum-

6. Although Appellant did not raise this claim before the trial court, ordinarily making the claim waived, *see* Pa.R.A.P. 302(a), we will address the merits of the claim under the relaxed waiver rule applicable to direct capital appeals. *Commonwealth v. Miller*, 541 Pa. 531, 664 A.2d 1310, 1322 (1995). While we recently abrogated the relaxed waiver rule in *Commonwealth v. Freeman*, 573 Pa. 532, 827 A.2d 385, 402 (2003), we did so only prospectively, and therefore, the relaxed waiver doctrine continues to apply to direct appeals such as the instant one in which the appellant's brief was filed prior to this Court's decision in *Freeman*.

stance. N.T., 3/9/01, at 7; *see* 42 Pa.C.S. § 9711(e)(1) (listing a defendant's lack of "significant history of prior criminal convictions" as a mitigating circumstance). Defense counsel then informed the trial court that he was not feeling well and the trial court agreed to continue the discussions pertaining to the applicable aggravating and mitigating factors until after the weekend. On Monday morning, the parties continued to discuss which prior convictions were admissible as an aggravating circumstance pursuant to Section 9711(d)(9), but defense counsel did not raise any plans to pursue Appellant's lack of prior criminal convictions as a mitigating circumstance at this point.

Appellant now argues that the trial court erred by refusing to charge the jury on the mitigating circumstance that Appellant had no significant criminal history. In the first instance, this claim is a bit curious as Appellant never *requested* that the trial court instruct the jury on the Section 9711(e)(1) mitigating circumstance, nor did he object to its omission from the trial court's charge.[7] In addition, although Appellant's counsel initially mentioned that he "was going to argue that there is a lack of significant history" as a mitigating circumstance to the jury, he never followed up on that preliminary plan, and in fact never argued the existence of that mitigating circumstance to the jury. *See* 42 Pa.C.S. § 9711(c)(1) (before the jury retires to consider sentencing verdict, court shall instruct jury on the mitigating circumstances **as to which there is some evidence**) (emphasis added); *Commonwealth v. Lester*, 554 Pa. 644, 722 A.2d 997, 1006–1007 (1998) (trial court did not err when it did not charge the jury on mitigating circumstances that were not supported by the evidence). Finally, even assuming that Appellant's counsel had provided the court with a basis for instructing the

7. Appellant claims in his brief to this Court that the trial court "declared that it would not be willing to charge" on the mitigating circumstance that Appellant had no significant criminal history. Appellant's Brf. at 21. Although Appellant cites to a page of the record which allegedly supports this contention, there is no indication on that page—or anywhere in the record for that matter—that the trial court made such a declaration.

jury on the Section 9711(e)(1) mitigating circumstance by arguing the existence of that mitigator to the jury, such an argument would have opened the door for the Commonwealth to present evidence of Appellant's significant prior criminal history. *See Commonwealth v. Wharton*, 542 Pa. 83, 665 A.2d 458, 460 (1995) (if defendant pursues his lack of a significant criminal history as a mitigating circumstance, the Commonwealth is permitted to present as rebuttal all of the defendant's prior convictions). Although Appellant only had two convictions that were admissible for purposes of the Section 9711(d)(9) aggravating circumstance, these were far from Appellant's only prior convictions. In addition to Appellant's extensive juvenile record, Appellant had previously been convicted of the manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance, defiant trespass, robbery, possession of an instrument of crime, second-degree murder, aggravated assault, and simple assault.[8] Given these circumstances, we simply do not see how Appellant was prejudiced by the court's failure to give a charge on the Section 9711(e)(1) mitigator here.

Having concluded that Appellant's claims for relief are without merit, we must, in compliance with our statutory duty pursuant to 42 Pa.C.S. § 9711(h)(3), affirm the sentence of death unless we determine that the sentence was the product of passion, prejudice or any other arbitrary factor; or that the evidence fails to support the finding of at least one aggrava-

---

**8.** Appellant appears to argue that he only had two convictions that were admissible for purposes of rebutting the Section 9711(e)(1) mitigating circumstance. As noted above, Appellant did have only two convictions that were admissible for purposes of the Section 9711(d)(9) aggravating circumstance. However, as the language of Section 9711(d)(9) and Section 9711(e)(1) make clear, a broader range of convictions are admissible for proving, and rebutting, the Section 9711(e)(1) mitigator than those that are admissible for purposes of proving the Section 9711(d)(9) aggravator. *Compare* 42 Pa.C.S. § 9711(d)(9) (listing defendant's "history of felony convictions **involving the use or threat of violence to the person**" as an aggravator) (emphasis added) *with* 42 Pa.C.S. § 9711(e)(1) (listing defendant's lack of "significant history of prior convictions" as a mitigator). *See also Wharton*, 665 A.2d at 460 (if the defendant presents evidence of a mitigating factor under Section 9711(e)(1), the Commonwealth is permitted to present as rebuttal *all* of the defendant's prior convictions)(emphasis added).

ting circumstance. Upon review of the record, we conclude that the sentence of death was not the product of passion, prejudice or any other arbitrary factor but rather, was based upon sufficient evidence that Appellant intentionally killed Wise. We also conclude that the evidence was sufficient to support the finding of at least one aggravating circumstance, that Appellant committed the murder during the perpetration of a felony, namely robbery. *See* 42 Pa.C.S. § 9711(d)(6).

The sentence of death is affirmed.[9]

9. The Prothonotary of the Supreme Court is directed to transmit the complete record of this case to the Governor of Pennsylvania. *See* 42 Pa.C.S. § 9711(i).