J. A25039/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MONTRELL GAINEY, | : | |
| | : | |
| Appellant | : | No. 1055 EDA 2014 |

Appeal from the Judgment of Sentence March 12, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division No(s).: CP-51-CR-0014125-2011

BEFORE: DONOHUE, MUNDY, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED NOVEMBER 30, 2015**

Appellant, Montrell Gainey, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas following a jury trial and conviction for first-degree murder,[1] aggravated assault,[2] firearms not to be carried without a license,[3] and possessing instruments of crime.[4] He challenges the sufficiency of the evidence for first degree murder and claims the trial court erred in denying his motion *in limine* to preclude certain statements made by the Commonwealth in its opening statement

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 2502(a).

[2] 18 Pa.C.S. § 2702.

[3] 18 Pa.C.S. § 6106.

[4] 18 Pa.C.S. § 907.

regarding a feud between a faction at Richard Allen Home and Penn Town. We affirm.

Appellant's conviction arises from the shooting of Lamar Spencer and Tracy Capers on May 11, 2011. Trial Ct. Op., 9/23/14, at 2. The incident occurred during Spencer's work break in front of an appliance shop owned by his father. *See* N.T., 3/6/14, at 15-16, 25. DePaul Babbs, an employee of the shop, called 911 during the shooting. *Id.* at 190-91, 201. Spencer died soon after the shooting from a "single penetrating gunshot wound to the back. . . ." Trial Ct. Op. at 3. Capers was shot three times, but survived. *Id.* at 2-3; N.T., 3/7/14, at 4-5. Investigators found ten .45-caliber casings at the scene. N.T., 3/7/14, at 34-36. The parties stipulated that all ten casings came from the same weapon. *Id.* at 125-26.

Police interviewed Babbs on the afternoon of the shooting, but he said he had only seen "a gun and nothing else." N.T., 3/10/14, at 21. On May 12, 2011, Detective Micah Spotwood and Detective McDermott,[5] interviewed Babbs again. *Id.* at 22. At trial, Detective Spotwood read the two page interview to the jury. *Id.* at 23. In pertinent part, it stated:

> [Q:] [Babbs], were you previously interviewed on Wednesday, May 11th, 2011 by Detective Glenn in regards to the shooting death of Lamar Spencer?
>
> A: Yes.

---

[5] We note that our review of the record did not reveal some individual's first names.

Q: During the interview, did you tell Detective Glenn everything that you can recall about the shooting of Lamar Spencer and a second individual at 1927 Ridge Avenue?

A: No.

Q: Please tell us what information you did not give to Detective Glenn.

A: I didn't tell him that I saw a side view of the shooter.

Q: Can you now give Detective McDermott and I a description of the shooter?

A: Yes. He was a black male with a mustache, white T-shirt, blue jeans. I believe the jeans had pockets on the sides or legs. Black sneaks, ankle high. He was darker than me. He was medium dark complexion. About 150 to 160 pounds. About five-feet-11. I believe that he might be between the ages of 30 to 35 years but he could be a little bit younger. It's just an estimate.

*Id.* at 24-25 (quotation marks omitted).[6] During this interview, he said he had withheld information during his initial interview with police, "[b]ecause [he] was afraid there could be repercussions." *Id.* at 28.

Detective Spotwood testified that on May 12, 2011, investigators spoke with Capers in his hospital room. *Id.* at 28-29. At that time, he did not identify his assailant. *Id.* at 29-30. Detective Spotwood was shown Capers' statement and the attached photographs from the second interview held on June 6, 2011. *Id.* at 30-31. Capers identified each of the people in the photographs that were there with him when the incident happened. *Id.*

---

[6] Detective Micah Spotwood read the two page interview to the jury. *Id.* at 24-28.

at 31-32. Capers identified Appellant as the man who shot him and Spencer. *Id.* at 32. Detective Spotwood identified Appellant as the person Capers identified from the photographs. *Id.* Capers testified that he knew Appellant for "[a] couple years" prior to the shootings. N.T., 3/6/14, at 21.

On June 15, 2011, police arrested Appellant and executed a search warrant at his home. N.T., 3/7/14, at 89-91. When they entered the property, they found Appellant standing outside of the front bedroom on the third floor. *Id.* at 79-80. The following items were recovered during the course of the execution of the search warrant:

> [O]ne Remmington [sic] ammunition box containing one live .357 round; one magazine tech ammunition box; .38 Special empty; one Paritizan ammunition box containing 14 live, .380 rounds, 23 live .45 caliber rounds of ammunition; one Winchester ammunition box, a .45 caliber, empty and proof of residence.

*Id.* at 91-92. The proof of residence, *viz.*, a letter addressed to Appellant, and the aforementioned items were found "in the third floor front bedroom of the property." *Id.* at 92-93.

Prior to trial, counsel for Appellant indicated to the court that he had received a letter from the Commonwealth "regarding his intention to introduce evidence of an ongoing feud . . . between Richard Allen Projects and Penn Town area as the motivation or the underlying cause of this particular incident." N.T. Pretrial/*Voire Dire*, 3/4/14, at 4. Counsel for Appellant objected to the introduction of this evidence and stated to the court:

Obviously an ongoing problem between two groups can be a basis for motivation of a particular defendant to do an act. Obviously that can be admissible. Here's my problem with the analysis as the government would portray it here. For it to be admissible against [Appellant] as a motive for him doing what he's been doing, one has to show that he was part of—not just that he lived at 10th and Brown.[7] That he somehow was part of a group that was feuding with another group. . . .

[A] shooting[8] can occur by someone who lives at 10th and Brown but has nothing to do with Richard Allen or has nothing to do [sic] Penn Town. . . . So that's why I'm saying there has to be a basis in the testimony to link [Appellant's] activity to the Richard Allen mentality, retaliation for a homicide that occurred some two months earlier.

*Id.* at 11-12. The trial court denied the motion and opined, "there wouldn't be any reason for the jurors not to know the surrounding circumstances. To have a complete picture of what was going on generally in the neighborhood." *Id.* at 12.

At trial, Capers testified:

I was coming from my girlfriend's house. And I was on my way to my mother's house where I had—I had seen [Spencer]. And he flashed me down because I had seen him. So I go have a conversation with him. We wound up having a conversation. . . . Then I see [Appellant] coming up on the other side of the street. He actually spoke to him. So I think nothing of it.

---

[7] The Commonwealth explained that the area around 10th and Brown is associated "as Richard Allen." *Id.* at 7.

[8] The Commonwealth noted that Capers referred to a shooting in March of 2011 in the area. *Id.* at 8.

Then [Spencer] suddenly is having a conversation. The next thing I know, shots go off. I run and I got shot in the leg. I got shot. I went down.

N.T., 3/6/14, at 8. He stated that he did not tell the detectives the truth when they interviewed him on May 12th. *Id.* at 30. He did not "want to go through this process. [He] didn't want to come to court and take the stand and testify." *Id.* At trial he stated he identified the photograph of Appellant, which was attached to his June 6th statement, when he told the detectives the truth about what happened. *Id.* at 33-34, 36-37.

Babbs testified at trial that he was working in the appliance store when he heard a gunshot. *Id.* at 199. He went to the door and heard "a couple" of gunshots. *Id.* at 200. When the shooting stopped he went to the front door and saw Spencer on the ground and called 911. *Id.* at 201. In his second interview, he gave the detective a description of the shooter. *Id.* at 207-08. He explained that he did not give a description of the shooter during the first interview because of the possible repercussions. *Id.* at 215-16. When asked to clarify his previous assertion that he feared the repercussions of making statements to police, Babbs testified, "[y]ou might get hurt for speaking up, talking." *Id.* at 216.

On March 12, 2014, the trial court sentenced Appellant to life imprisonment for first-degree murder.[9] This timely appeal followed.[10] Appellant filed a court ordered Pa.R.A.P. 1925(b)[11] statement of errors complained of on appeal. The trial court filed a responsive opinion.

Appellant raises the following issues for our review:

---

[9] The certified record transmitted on appeal did not initially include the notes of testimony from the March 12, 2014 hearing in which the verdict was read and the trial court sentenced Appellant. Upon informal inquiry by this Court, the trial court provided the transcript. We remind Counsel that the appellant bears the burden of "ensur[ing] the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty." *See Commonwealth v. B.D.G.*, 959 A.2d 362, 372 (Pa. Super. 2008) (*en banc*) (citations omitted).

[10] We note that Appellant did not file post-trial motions. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). At sentencing, the trial court did not apprise Appellant of the need to file post-sentence motions to preserve issues for appeal. In *Commonwealth v. Malovich*, 903 A.2d 1247 (Pa. Super. 2006), this Court opined:

> We will not conclude that [the a]ppellant forwent the opportunity to raise issues via post-sentence motions when the sentencing court did not tell him he could file such motions. Given that [the a]ppellant was unaware of the need to preserve claims in a motion for reconsideration, we find that he has not waived those claims on appeal.

*Id.* at 1252 (citations omitted).

[11] Appellant also raised the following issue in his Pa.R.A.P. 1925(b) statement: "The sentence was excessive and an abuse of discretion where the Court did not sufficiently consider mitigating factors presented by [Appellant] and over emphasized the criminal acts." Appellant's Pa.R.A.P. 1925(b) Statement, 6/13/14, at 1. This issue was abandoned on appeal as it was not raised in Appellant's brief. *See Commonwealth v. Dunphy*, 20 A.3d 1215, 1218 n.2 (Pa. Super. 2011).

A. Whether the verdict of first degree murder was insufficient as a matter of law where it was based on unreliable identification evidence and there was no additional corroborative physical evidence to support the verdict?

B. Whether the court erred in denying the defense motion to preclude statements regarding the feud between a faction at Richard Allen Home and Pen[n] Town and/or the murder in Commonwealth's opening statements?

Appellant's Brief at 5.

We recite verbatim Appellant's argument that the evidence was insufficient as a matter of law to sustain his conviction for murder.

With regard to first-degree murder, the Appellant believes the evidence did not establish that he was the perpetrator of the homicide, an element of the crime as a matter of law. He again admitted to not being truthful at the preliminary hearing including a different description of a person other than the Appellant.

The evidence indicated the Mr. Caper[s], who was the only one to identify the Appellant did not do so until over a month after the shooting and after multiple contacts with the police. He admitted that he did not tell the truth to detectives when he was first interviewed by them in the hospital about where he was during the night of the shooting. He stated that he was reluctant to come to court and there was a bench warrant and he had to be taken into custody to appear. (N.T. 3/6/14, pp. 10-180).[12] DePaul Babbs, a witness at the scene who could not identify the shooter, testified that Mr. Caper[s] did not identify anyone as the shooter at the time of the shooting. (N.T. 3/6/14, pp. 189-195).[13]

---

[12] Appellant has not identified with particularity the "place in the record where the matter referred to appears." *See* Pa.R.A.P. 2119(c).

[13] We note that there is no reference to Capers in the notes of testimony referenced to by Appellant.

The Commonwealth did not prove beyond a reasonable doubt that the accused was the individual who committed the shooting. A single identification that was given one month after the shooting is not sufficient as a matter of law to prove that the accused committed a murder. As a result, the conviction should be vacated.

*Id.* at 9-10.

Our review is governed by the following principles:

Our standard of review regarding challenges to the sufficiency of the Commonwealth's case is well settled. In reviewing the sufficiency of the evidence, we consider whether the evidence presented at trial, and all reasonable inferences drawn therefrom, viewed in a light most favorable to the Commonwealth as the verdict winner, support the jury's verdict beyond a reasonable doubt. The Commonwealth can meet its burden by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances. As an appellate court, we must review the entire record . . . and all evidence actually received[.] [T]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence. Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary.

*Commonwealth v. Brooker*, 103 A.3d 325, 330 (Pa. Super. 2014), (citations and quotation marks omitted), *appeal denied*, 118 A.3d 1107 (Pa. 2015).

"To obtain a first-degree murder conviction, the Commonwealth must demonstrate that a human being was unlawfully killed, the defendant perpetrated the killing, and the defendant acted with malice and a specific

intent to kill." ***Commonwealth v. Mattison***, 82 A.3d 386, 392 (Pa. 2013) (citations omitted). "In addition to proving the statutory elements of the crimes charged beyond a reasonable doubt, the Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes." ***Commonwealth v. Brooks***, 7 A.3d 852, 857 (Pa. Super. 2010).

In ***Commonwealth v. Hanible***, 836 A.2d 36 (Pa. 2003), the Pennsylvania Supreme Court rejected a defendant's claim that the evidence was insufficient to support his first degree murder conviction.

> [The a]ppellant argues, however, that the evidence was not sufficient to sustain his first-degree murder conviction because the conviction was based primarily on [a witness's] statement to the police, which [the witness] subsequently recanted at trial. Contrary to [the a]ppellant's assertion, the mere fact that [the witness] **recanted a statement he had previously made to the police certainly does not render the evidence insufficient** to support [the a]ppellant's conviction. Rather, the jury was free to evaluate both [the witness's] statement to police as well as his testimony at trial recanting that statement, and free to believe all, part, or none of the evidence. It is not for this Court to reweigh the evidence and substitute its judgment for that of the fact-finder. Moreover, in making his claim, [the a]ppellant ignores the additional circumstantial evidence that pointed to him as the killer . . . . Thus, [the a]ppellant's claim that the evidence was insufficient to support his first-degree murder conviction fails.

***Id.*** at 39-40 (citations omitted and emphasis added).

Instantly, Appellant solely argues the evidence was insufficient to establish his identity as the perpetrator of the murder. Appellant's Brief at 10. He does not contest the sufficiency of the evidence in relation to the

specific elements of the crime itself. Capers was the second victim in the underlying incident, was in close proximity to the victim during the shooting, and gave a detailed description of events. Capers, like the witness in *Hanible*, knew Appellant prior to the shooting and identified him by name. *See Hanible*, 836 A.2d at 39. While Capers sometimes denied being able to identify Appellant, the jury found his identification of Appellant credible. *See id.*

In the case *sub judice*, another witness, Babbs, gave statements corroborating details of Capers' account of events. *See id.* Babbs also gave a detailed description of the shooter. *See id.* While Babbs originally denied being able to give the police details about the crime, the jury found his later statements credible. *See id.*

Appellant claims Capers' eyewitness identification alone was insufficient to prove he committed the underlying murder as a matter of law, however, as in *Hanible*, Appellant "ignores the additional circumstantial evidence that pointed to him as the killer." *See id.* The parties stipulated that all of fired cartridge casings were from the same gun and were the .45 caliber Winchester brand. The Commonwealth presented evidence to support Capers' eyewitness identification, including the partially empty box of .45 caliber rounds found in Appellant's home and Babbs' statements and testimony. *See id.* Viewed in the light most favorable to the

Commonwealth, the evidence was sufficient to support the jury verdict. **See id.**; **Brooker**, 103 A.3d at 330; **Brooks**, 7 A.3d at 857.

Lastly, Appellant argues the trial court erred in denying his motion *in limine* "to preclude statements regarding the feud between a faction at Richard Allen home and Pen[n] Town . . . in [sic] Commonwealth's opening statements."[14] Appellant's Brief at 11. We state Appellant's argument verbatim:

> In the instant matter, a motion *in imine* was litigated on March 4, 2015. At that time, defense counsel sought to exclude any reference to an ongoing feud between the Richard Allen Projects and the Penn Tower area. The Commonwealth did not have any evidence establishing that the Appellant was part of a gang.
>
> Despite the court stating that it would reserve its ruling,[15] the Commonwealth referenced it in its opening

---

[14] We note that Appellant also states the Court erred in denying the motion to preclude the reference to "the murder in Commonwealth's opening statements." Appellant does not present any argument in relation to this averment in his brief.

[15] Contrary to Appellant's assertion, the court ruled on the motion prior to trial.

> So your motion as I understood it was to preclude information about any disturbances that had happened between the residence [sic] of Richard Allen and some of the residence [sic] of Richard Allen and some of the residents at Penn Town.
>
> At this point **I'm going to deny that motion**. . . .

N.T., 3/4/14, at 12-13 (emphasis added).

argument (N/T 3/5/14, pp. 108-109)[16] and in its cross-examination of a witness, Andrew Fabry (N/T 3/5/14, pp. 173-175).[17]

---

[16] For clarity we note that immediately preceding the notes of testimony referenced by Appellant, the Commonwealth stated on page 107: "That afternoon Tracy Capers was walking from his girlfriend's apartment in"

another part of North Philadelphia heading to his mom's place. Took a route that took him down Ridge Avenue. Right there at Ridge Avenue you have 19th Street, you have Thompson Street and you have a gas station just down the street. Some of you might be familiar with. Well, that's where Lamar Spencer's dad's appliance shop was located at. They fixed appliances. Sold appliances. Some of them out in front of his store. That's where Lamar Spencer worked.

Tracey Capers on his route from his girlfriend's house sees another young man that he knows from Richard Allen. A young man named Roger Washington. He knows when he sees Roger Washington and Roger Washington looked at him, he needs to be leery; be aware of his surroundings because of the violence that is going back and forth. He did not consider Roger Washington a friend. He considered Roger Washington someone he needed to look out for.

Well, he makes his way down passing the appliance shop and sees Lamar and stops to talk to him. He's a friend of his. Lamar and him are outside—right outside the front door of the shop. There's a telephone pole. You will see pictures, exactly what the area looked like that afternoon. They are standing by the telephone pole. And up the street comes Roger Washington and up the other direction comes [Appellant]. Tracey Capers has known for years. Good friends with Roger.

Someone else that he's looking out for. Someone that is not a friend of Tracy Capers. Someone from Richard Allen. What the evidence will show is that as Lamar and Tracey are standing right by the telephone pole talking, that [Appellant] and Roger meet up almost where they are

> The admission of any reference to the fight between the two housing projects was far more prejudicial than probative. The identifications of the Appellant by the two witnesses were tenuous at best. No one was able to name any suspect at the time of the incident. The mention of a "gang war" was only raised to prejudice the Appellant and imply that the witnesses were being intimidated. It did not shed light on any other aspect of the cases and therefore, should have been excluded. Therefore, the Appellant should be granted a new trial.

*Id.* at 11-12.

In reviewing the denial of a motion *in limine*,

> we apply an evidentiary abuse of discretion standard to the denial of a motion in limine.
>
> > Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and we will not reverse the court's decision on such a question absent a clear abuse of discretion.

*Commonwealth v. Zugay*, 745 A.2d 639, 645 (Pa. Super. 2000) (citation omitted).

> > Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or

---

> standing. And in fact, Monte, as Tracy Capers calls [Appellant] and either Lamar or Tracy exchange a what's up; a short greeting as they cross path [sic].

N.T., 3/5/14, at 108-09.

[17] In support of this claim, Appellant refers to the March 5, 2014 notes of testimony on pages 173-75. A review of the record belies this assertion. The jury was excused prior to the discussion between defense counsel and the court, which is transcribed on pages 173-75. *See* N.T., 3/5/14, at 172-75.

- 14 -

where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will. Furthermore, because the trial court indicated the reason for its decision . . . our scope of review is limited to an examination of the stated reason.

*Commonwealth v. Stephens*, 74 A.3d 1034, 1037 (Pa. Super. 2013) (quotation marks and citations omitted).

In *Commonwealth v. Broaster*, 863 A.2d 588 (Pa. Super. 2004), this Court opined:

According to Pa.R.E. 401, "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

\* \* \*

Because all relevant Commonwealth evidence is meant to prejudice a defendant, exclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case. As this Court has noted, a trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration **where those facts form part of the history and natural development of the events and offenses with which [a] defendant is charged**.

*Id.* at 592.

We limit our review to the trial court's reasoning. *See Stephens*, 74 A.3d at 1037. The trial court found the evidence of hostilities in the neighborhood would be admissible as part of the "history and natural development" of the instant murder. *See Broaster*, 863 A.2d at 592. The

ruling was not clearly erroneous. ***See Stephens***, 74 A.3d at 1037. We discern no abuse of discretion. ***See Zugay***, 745 A.2d at 645.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/30/2015