J-S50007-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                        :          PENNSYLVANIA
                                        :
         v.                              :
                                        :
AARON I. MACK                       :
                                        :
             Appellant            :       No. 1459 WDA 2017

Appeal from the Judgment of Sentence May 23, 2017
In the Court of Common Pleas of Cambria County Criminal Division at
No(s):  CP-11-CR-0001673-2016

BEFORE:  BOWES, J., OTT, J., and KUNSELMAN, J.

MEMORANDUM BY BOWES, J.:            FILED DECEMBER 27, 2018

Aaron I. Mack appeals from the judgment of sentence of life imprisonment imposed after a jury convicted him of first-degree murder and two counts of aggravated assault. We affirm.

The trial court summarized the underlying facts as follows.

> These charges arose from the shooting of Daron Shamburger ("Shamburger") on the night of December 30, 2015[, at the Solomon Homes housing complex in Johnstown, Pennsylvania]. At trial the Commonwealth presented testimony and evidence to establish what took place that night. The Commonwealth did so primarily through the testimony of Devone Huddleston ("Huddleston") whose testimony was supported and corroborated by physical evidence, including video camera footage, and testimony of other witnesses.
>
> Huddleston testified that he arrived at Solomon Homes Building Four, the building outside of which Shamburger was shot, and was planning to spend time with his cousin, Shamburger. Huddleston then went to the apartment of Heather Stiffler where he saw [Appellant]. Huddleston testified that when he entered the apartment he saw [Appellant] seated on the couch in the living room wearing a light grey hooded sweatshirt and light grey

sweatpants. Huddleston recognized [Appellant] from a family reunion he attended when he was younger and approached [Appellant] in the apartment. He asked [Appellant] if he was his cousin. [Appellant] replied, "No" and Huddleston proceeded to use the bathroom and exited the apartment.

Upon exiting the apartment which was located on one of the upper levels, Huddleston walked downstairs through a stairwell and answered his cell phone at the bottom of the stairwell - still inside the building. While Huddleston was standing at the bottom of the stairwell[, Appellant] and a second individual came down the stairs, ran past Huddleston, and exited through the door to the outside. Huddleston testified that the door [Appellant] exited through was solid except for one window. [Appellant] was wearing the same grey sweatshirt and sweatpants that Huddleston had seen him in earlier, but instead of having his hood down, as he had in the apartment, [Appellant] now had the hood pulled over his head and the strings on the hood were pulled tight and tied. Huddleston could see [Appellant's] eyes and nose with the hood pulled tight.

As soon as [Appellant] exited the building Huddleston looked through the window and continued watching [Appellant]. Almost immediately thereafter, Huddleston, through the window in the door, saw [Appellant] shoot Shamburger and heard the gunshot. Huddleston testified that Shamburger dropped to the ground after the first shot. [Appellant] then walked over to where Shamburger was laying, stood over top of Shamburger, and shot him a second time.

Trial Court Opinion, 11/27/17, at 1-3 (citations omitted).

During cross-examination, Huddleston acknowledged that his trial testimony was inconsistent with statements he had given to police. Huddleston admitted that he had told the police that he did not see the shooter's face, and that he had been outside the building at the complex's basketball courts when the shooting occurred. N.T. Trial, 4/10/17, at 90, 96. Huddleston indicated that he lied because was scared and did not want to

place himself at the scene of a crime. Id. at 92, 98, 104, 105. Although other witnesses and a surveillance video corroborated portions of Huddleston's testimony, such as the location of the shooting and clothing the shooter had worn, no evidence other than Huddleston's testimony identified Appellant as the shooter.

At the close of the Commonwealth's case, Appellant moved for a judgment of acquittal pursuant to Pa.R.Crim.P. 606(A)(1), contending that the evidence was insufficient to prove that Appellant was the shooter under Commonwealth v. Farquharson, 354 A.2d 545 (Pa. 1976) ("[W]here evidence offered to support a verdict of guilt is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, a jury may not be permitted to return such a finding."). Specifically, Appellant argued as follows:

> In this case where we have the only witness that attempts to put [Appellant] at the scene is Devone Huddleston, who this [c]ourt has heard have three prior statements to the Johnstown Police that were so wholly inconsistent and full of lies when he comes into court, was so incredible to believe him[. Y]es, they have a video, but the video does not show [Appellant]. There is no possible way this jury could have inferred that he could identify [Appellant] from that video. None of the police officers can put [Appellant] there but Mr. Huddleston.
>
> And in fact [Commonwealth's witness] Lahkeema Dickey said the man who shot [Shamburger] was five six to five eight. Clearly [Appellant] is much taller than that, so they have no evidence.

N.T. Trial, 4/12/17, at 21. The trial court denied the motion. Id. at 22.

- 3 -

On April 12, 2017, the jury convicted Appellant of first-degree murder and two counts of aggravated assault, and the trial court sentenced Appellant to life imprisonment on May 23, 2017.  Following a hearing, Appellant's timely post-sentence motion was denied by order of September 8, 2017.  Appellant filed a timely notice of appeal and court-ordered statement of errors complained of on appeal, and the trial court authored an opinion pursuant to Pa.R.A.P. 1925(a).

Appellant presents the following questions for our review, which we have reordered for ease of disposition:

1.    Whether the trial court erred in denying the Appellant's motion for judgment of acquittal on the weight of the evidence?

2.    Whether the trial court committed an abuse of discretion in failing to permit the jury to view the crime scene?

Appellant's brief at 4 (unnecessary capitalization omitted).

Appellant's first question conflates the concepts of sufficiency and weight challenges to the Commonwealth's evidence.  As our Supreme Court explained:

The distinction between these two challenges is critical.  A claim challenging the sufficiency of the evidence, if granted, would preclude retrial under the double jeopardy provisions of the Fifth Amendment to the United States Constitution, and Article I, Section 10 of the Pennsylvania Constitution, whereas a claim challenging the weight of the evidence if granted would permit a second trial.

A claim challenging the sufficiency of the evidence is a question of law.  Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime

- 4 -

charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

Commonwealth v. Widmer, 744 A.2d 745, 751-52 (Pa. 2000) (internal citations, quotation marks, and footnote omitted).

With his statement of questions presented, Appellant contends that the trial court's error was in denying his motion for judgment of acquittal, a remedy appropriate when the evidence was insufficient to sustain a verdict. Appellant's brief at 4. Consistent with a sufficiency challenge, in the argument section of his brief Appellant relies in part upon Commonwealth v. Bennett, 303 A.2d 220 (Pa.Super. 1973), a case in which this Court reversed a conviction because the Commonwealth's evidence was so contradictory that

any finding by the jury would be a mere guess, rendering the award of a new trial futile. Id. at 10.

However, Appellant also styles his claim in the argument portion of his brief as one that verdict was contrary to the weight of the evidence, cites Widmer's standard for weight claims, and suggests that this Court should remedy the error by granting Appellant a new trial because Huddleston's testimony "was so tainted and unreliable that any conviction based on same should shock the conscience." Id. at 10-11.

A review of the record fails to clarify which type of claim Appellant wishes this Court to consider, as he raised both sufficiency and weight claims in both his post-sentence motion and his Rule 1925(b) statement. Further, the trial court concluded in its 1925(a) opinion that Appellant waived both claims by failing to state them with sufficient specificity. See Trial Court Opinion, 11/27/17, at 13 ("[T]he issue of sufficiency is waived here on appeal because [Appellant] failed to specify the element or elements upon which the evidence was insufficient."); id. at 14-15 (concluding that Appellant's weight claim is waived because he made only a vague, boilerplate challenge in his post-sentence motion and 1925(b) statement).

To the extent that Appellant challenges the sufficiency of the evidence based upon the contradictory versions of events given by Huddleston, we conclude that the issue is preserved for appeal. The trial court was aware from his oral motion for judgment of acquittal of the nature of his sufficiency

challenge: that the Commonwealth offered insufficient evidence to prove that Appellant was the shooter because the jury could not determine the issue beyond a reasonable doubt from Huddleston's testimony. See N.T. Trial, 4/12/17, at 21. Further, the absence of a trial court opinion analyzing the sufficiency claim does not hamper our review, as evidentiary sufficiency is a question of law and "our standard of review is de novo and our scope of review is plenary." Commonwealth v. Williams, 176 A.3d 298, 305 (Pa.Super. 2017).

Therefore, we will consider the merits of Appellant's sufficiency claim, bearing in mind the following:

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

Id. at 305-06 (citations and quotation marks omitted).

As noted, Appellant's argument is that the fact that Huddleston gave multiple statements to the police that contradict his trial testimony renders the jury's finding that Appellant was the shooter the result of mere speculation. In support of his contention, Appellant relied upon our Supreme

Court's decision in Farquharson and this Court's decision in Bennett. However, we conclude that those cases afford Appellant no relief.

In Bennett, the Commonwealth's case was based upon the testimony of Jones, its lone witness. This Court explained its finding that Jones's testimony was insufficient to support Bennett's conviction of receiving of stolen property as follows:

> Jones (who had been contradictory with respect to his own perpetration of the larceny) sought to implicate the defendant by giving several wholly different, conflicting and inconsistent versions of when and how he had told her that the car had been in fact stolen by him. On a previous occasion Jones had denied he had ever conveyed to defendant knowledge of the car's theft. With each new version Jones would recant the previous one and protest that the newest version was in fact the true one. This situation presented the jury not with a mere conflict or contradiction in testimony which was reasonably reconcilable by them, but a situation falling within the rule: ... a case should not go to the jury where the party having the burden offers testimony of a witness, or of various witnesses, which is so contradictory on the essential issues that any finding by the jury would be a mere guess.... When the testimony is so contradictory on the basic issues as to make any verdict based thereon pure conjecture the jury should not be permitted to consider it.

Id. at 220-21 (internal quotation and citation omitted).

In Farquharson, the Court found Bennett inapplicable. We held that, although the testimony of the "crucial" witness in Farquharson might have been insufficient to support a finding of guilt beyond a reasonable doubt standing alone because of extremely questionable credibility, the verdict was also supported by corroborating evidence such that the question was properly left to the fact finder. Farquharson, 354 A.2d at 551.

As discussed above, the Commonwealth in the instant case provided not just the testimony of Huddleston, but other evidence that corroborated his trial testimony, such as that concerning what the shooter was wearing and how the incident unfolded. Although Huddleston gave prior inconsistent statements, the jury had the opportunity to observe him as he testified at trial and consider the reasons for the inconsistencies. Further, Huddleston's various representations both in and out of court were in fact consistent on the crucial issue: that Appellant was the shooter. See N.T. Trial, 4/10/17, at 136-37 (confirming that Huddleston identified Appellant as the shooter each time he was interviewed by police and at the preliminary hearing). As such, the jury did not have to guess what happened, but rather considered the credibility of each witness and weighed the evidence as a whole. Hence, there is no reason for this Court to deviate from the rule that it is for the jury to believe all, part, or none of the evidence. See, e.g., Commonwealth v. Hanible, 836 A.2d 36, 39 (Pa. 2003) (rejecting sufficiency of the evidence challenge based on witness's recantation of his prior statement to police). Thus, Appellant is entitled to no relief based upon his sufficiency claim.

To the extent that Appellant is seeking our review of his contention that Huddleston's inconsistent reports of the shooting rendered the verdict contrary to the weight of the evidence, assuming arguendo that he preserved the claim, we likewise conclude that no relief is due. As discussed above, it was within the province of the jury to believe Huddleston's trial testimony and

unwavering identification of Appellant, and to reconcile any inconsistencies among the various witnesses' testimony. The trial court did not abuse its discretion in denying Appellant's weight-of-the-evidence challenge.[1] See, e.g., Commonwealth v. Brown, 134 A.3d 1097, 1105, (Pa.Super. 2016) (affirming trial court's denial of weight claim in case where trial testimony of identification witnesses was inconsistent with statements to police and video evidence did not reveal the identity of the shooter).

Appellant's remaining issue is that the trial court abused its discretion in not permitting the jury to view the crime scene. Prior to trial, the Commonwealth moved for a jury view of the site of the shooting. As the trial court explained,

> The Commonwealth's [m]otion requested that the jury be able to stand inside a stairwell and look through the window in a door to the outside where the shooting took place. The Commonwealth asserted that this view would help the jury better understand the testimony of . . . Huddleston, who testified that he was standing in that stairwell and saw [Appellant] shoot the victim through the window in the door. The Commonwealth stated,
>
> > We just thought that although we have photographs of that, the detective and I had gone out personally and taken photographs of that setting with the door, with the window. Those things, we think that it would

_____

[1] While it did not address the merits of Appellant's weight claim in its Rule 1925(a) opinion, it is apparent that the trial court concluded that the verdict did not shock its conscience since it denied the motion for a new trial based upon the weight of the evidence at the hearing on Appellant's post-sentence motion. See N.T. Post-Sentence Motions, 9/7/17, at 50 ("With regard to [Appellant's] motion for judgment of acquittal and new trial, insufficiency [and] the weight of the evidence, I do not believe that there has been an argument made that would require judgment of acquittal or a new trial.").

- 10 -

be advantageous for the jury to help them understand the setting where it took place, the proximity of where the witness would be to the homicide as well as where he was when they ran by him. We think it would help the jury to understand more the facts of the case.

The Defense responded,

Your Honor, we are not opposed to the jury view. However, if we are going to do a jury view, we believe that that view should include taking a look at what [Huddleston] witnessed when he first talked to the police said that he was [sic]. The same witness indicated that he was some 300 feet away, not in close proximity to the murder, but that he actually drew a map or put himself on a map. So if we're going to do a jury view we'd ask the jury also be shown where he first said that he was.

Trial Court Opinion, 11/27/17, at 6-7 (citations omitted).

We begin our consideration of the issue by noting that our Rules of Criminal Procedure provide that a "trial judge may in the judge's discretion order a view by the jury." Pa.R.Crim.P. 643(A). Accordingly, to merit relief Appellant must demonstrate that the trial court's denial of the Commonwealth's motion was the result of "manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." Commonwealth v. Hoover, 107 A.3d 723, 729 (Pa. 2014) (citation and internal quotation marks omitted).

Appellant argues that a view of the crime scene would have assisted the jury "in understanding the various statements of . . . Huddleston in relation to his location at the time of the shooting." Appellant's brief at 9. Appellant continues:

Likewise, a view by the jury would have allowed them to view the topography and vegetation, such as trees and bushes, which may have affected Mr. Huddleston's ability to see the shooting from what he claimed to be his various locations at the time of same. Moreover, if permitted, the view of the area of the shooting would have assisted the jury in understanding the evidence presented in court and resolving conflicts in testimony and statements given by Mr. Huddleston.

Id. at 9-10.

The trial court offered the following explanation for its exercise of discretion in denying the motion for a view:

> In the case at hand, the trial court denied the Motions for Jury View made by both [Appellant[2]] and the Commonwealth since both views would have been unnecessary and of little benefit to the jury. At trial, the Commonwealth introduced photographs taken both inside the stairwell, where Huddleston stood, and outside the stairwell door near where the victim was shot and killed. The Commonwealth admitted said photographs and they were used throughout trial to help the jury understand what occurred at the time of the shooting. For example, the Commonwealth showed Huddleston those pictures during his direct examination, Huddleston explained the pictures to the jury, and the Commonwealth used them to frame his testimony.
>
> A view by the jury at the location proposed by [Appellant] would have been just as unnecessary as that proposed by the Commonwealth. During an early interview by police, . . . Huddleston reviewed a map of the Solomon Homes where the shooting took place and marked on the map where he claimed to have seen the shooting from (near the basketball courts). It was at this location that [Appellant] later argued the jury should view the crime scene from. However, defense counsel, during cross-

_____

[2] The Commonwealth argues that Appellant waived this issue because he did not in fact file his own motion "and only conditionally acquiesced to the Commonwealth's motion[.]" Commonwealth's brief at 10. Since we readily conclude that Appellant's claim fails on its merits, we decline to parse out which aspects, if any, of the request were preserved by Appellant and which were waived.

examination of Detective Lawrence Wagner ["Wagner"], referenced the map marked by Huddleston and placed a blown-up version of said map on the projector screen for the jury to view. During this time, Wagner stated that Huddleston had said he viewed the shooting from near the basketball courts which were approximately 400 feet from the shooting. The testimony, combined with the map, proved sufficient evidence and information to allow the jury to understand and evaluate Huddleston's credibility accordingly. A jury view of the same location as was described in detail and showed on a map would have done little to further aid the jury in their understanding.

Trial Court Opinion, 11/27/17, at 7-8.

Furthermore, as the Commonwealth aptly notes, the fact that Huddleston would not have been able to see the shooting from the basketball courts was not in dispute at trial.

[Huddleston] read his prior interview to the jury, which stated the following:

Detective: From where you are on the basketball court, you know, you could see from where I know the shooting took place, where I knew it took place because I seen it. There is no . . . way you can see the shooting.

[Huddleston:] Yeah.

Thus, the Commonwealth conceded that no witness could see the shooting from the basketball courts. Nothing would be gained from a jury view.

Commonwealth's brief at 12 (cleaned up).

Given the circumstances, and the trial court's explanation for its decision, we cannot conclude that the denial of the motion for a view of the crime scene was an abuse of discretion. See, e.g., Commonwealth v. Lowry, 55 A.3d 743, 752-53 (Pa.Super. 2012) (affirming denial of motion to

view site where, in light of the photographs and video of the scene offered at trial and the descriptions of the scene given by witnesses, the jury had "a proper understanding of the scene of the accident" such that a view would have had minimal benefit). As such, Appellant's issue merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/27/2018