J-S61018-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDWARD WALLACE | : | |
| | : | |
| Appellant | : | No. 283 EDA 2019 |

Appeal from the Judgment of Sentence Entered July 27, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0012597-2013

BEFORE: BOWES, J., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OLSON, J.: **FILED JANUARY 09, 2020**

Appellant, Edward Wallace, appeals from the judgment of sentence entered on July 27, 2018, as made final by the denial of a post-sentence motion on December 17, 2018, following his jury trial convictions for conspiracy to commit murder[1] and first-degree murder.[2] We affirm.

The trial court accurately summarized the relevant factual background of this case as follows:

> On June 1, 2008, Ronald King was serving as a drug lookout on the corner of Fifth and Carpenter Streets in Philadelphia[, Pennsylvania]. At approximately 9:00 [p.m.] that evening, King saw the victim, Najee Gilliard, riding his bike along Fifth Street, towards King. King was not happy to see Gilliard, [as] Gilliard had

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 903 and 2502(a).

[2] 18 Pa.C.S.A. § 2502(a).

a reputation for causing trouble. Soon after, King heard the sound of a gun being fired and immediately noticed that Gilliard was on the ground. He also noticed that a green minivan was next to Gilliard, and saw [Appellant] in the minivan, attempting to close the rear passenger-side door of the van. The van then fled, turning onto Carpenter Street.

Although Philadelphia police soon arrived on the scene, King did not inform them that he witnessed the shooting. The officers observed that Gilliard was suffering from a gunshot wound on his left temple and therefore transported him in a police wagon to Jefferson Hospital, where he was later pronounced dead.

Gilliard's murder went without an arrest for approximately five years. In early 2013, Detective William Kelhower, the assigned investigator to Gilliard's case, became aware that King was a witness to the murder. Accordingly, the detective located King and transported him to the Homicide Unit for an interview. During the interview, King admitted that he had witnessed the shooting and told detectives what he had seen. In addition, King informed detectives that Sharon Jacobs and Lisa Thomas also [] witnessed the shooting. Therefore, detectives located and interviewed the two women, who both recounted hearing the sound of gunshots and seeing a green van flee the scene. In addition, Thomas told detectives that the green van belonged to her cousin, [Appellant].

Trial Court Opinion, 4/10/19, at 3-4.

Appellant's first trial began December 10, 2014, but ultimately resulted in a mistrial "due to the late turnover of discovery." *Id.* at 1. Appellant's second trial began in August 2016, but also resulted in a mistrial due to a hung jury. *Id.* Appellant's third and final trial began on July 23, 2018. On July 27, 2018, the jury convicted Appellant of the aforementioned crimes. "On [that] same day[,] the [trial court] imposed the mandatory sentence of life in prison for the first-degree murder charge[,] with a concurrent sentence of 17 to 34 years in prison for the conspiracy charge, for an aggregate sentence of life in prison." *Id.* Appellant filed a post-sentence motion on August 3, 2018,

- 2 -

and a supplemental post-sentence motion with leave of court on October 29, 2018. The trial court denied both motions on December 17, 2018. Trial Court Order, 12/17/18, at 1. This timely appeal followed.[3]

Appellant raises the following issues on appeal:[4]

I.    [Whether Appellant's right to a fair trial was violated because the Commonwealth failed to prevent Ronald King from testifying falsely and took no affirmative steps to mitigate the effects of the false testimony?]

II.    Did the trial court err in denying [Appellant's] objection to the admission of the stipulation of [Shantae] Coppock's witness statement under the Sixth Amendment['s] ban [against] testimonial hearsay?

III.    Whether the trial court erred in denying [] Appellant's motion for judgment of acquittal?

IV.    Whether the trial court erred in denying [] Appellant's motion for a new trial?

Appellant's Brief at 8-9 (superfluous capitalization omitted).

Preliminarily, we note that appellate briefs must conform in all material respect to the briefing requirements set forth in the Pennsylvania Rules of Appellate Procedure. Pa.R.A.P. 2101; *see also* Pa.R.A.P. 2114-2119. This

---

[3] Appellant filed a notice of appeal on January 15, 2019. On January 17, 2019, the trial court filed an order directing Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b)(1). Appellant timely complied. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on April 10, 2019.

[4] We have altered the order of Appellant's issues for clarity and ease of discussion. *See* Appellant's Brief at 8-9.

Court "will not become the counsel for an appellant, 'and will not, therefore, consider issues . . . which are not fully developed in his brief.'" ***Commonwealth v. Gould***, 912 A.2d 869, 873 (Pa. Super. 2006). Thus, "when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived." ***Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa. Super. 2007); ***see also*** Pa.R.A.P. 2101. With these principles in mind, we will address each of Appellant's claims in turn.

In Appellant's first issue, he argues that the Commonwealth violated his right to a fair trial by permitting its witness, Ronald King, to provide "false testimony." Appellant's Brief at 24-25. Per Appellant, Ronald King "made a series of misstatements and lies" regarding "the timing and nature of the Commonwealth's assistance," particularly, the Commonwealth's alleged provision of "rent money" which King testified was provided to him for a hotel stay.[5] ***Id.*** at 30, 32. This issue, however, is waived. In his appellate brief, Appellant fails to direct this Court's attention to the specific false statements made by King in the certified record. ***See Commonwealth v. Fransen***, 42 A.3d 1100, 1116 n.14 (Pa. Super. 2012) (explaining that an appellant's claim may be deemed waived for failure to direct this Court's attention to that part

---

[5] Per Appellant, King falsely testified about the timing of a hotel stay provided by the Commonwealth. He argues that the Commonwealth paid for King to stay at a hotel prior to a preliminary hearing in 2014, but King testified that he did not stay at the hotel until after the preliminary hearing. ***See*** Appellant's Brief at 35 and 47-48.

of the record substantiating his claim); *see also Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa. Super. 2007) (holding that the failure to properly develop an argument in an appellate brief, including proper citation to the record, results in waiver; this Court will not "scour the record to find evidence to support an argument"); *see also* Pa.R.A.P. 2119(c). Instead, Appellant makes bald assertions of King's falsity and general references to King's entire testimony. *See* Appellant's Brief at 24-51. Accordingly, Appellant's first issue is waived.

Even if Appellant's first issue were not waived for failure to cite to the certified record, it is waived for failure to object at the time of trial. As the trial court noted:

> When defense counsel is aware that the testimony from a Commonwealth's witness is false and fails to object, a due process claim is not available on appeal. Here, defense counsel was aware of the circumstances surrounding King's relocation because at [Appellant's] first trial, the Commonwealth stated on the record that prior to [Appellant's] preliminary hearing, King had been placed in a hotel through the assistance of the Commonwealth. Although King testified at the instant trial that the relocation did not occur until after the hearing, defense counsel did not object to King's testimony. Accordingly, [Appellant's] claim is waived.

Trial Court Opinion, 4/10/19, at 21 (internal citations omitted).

Moreover, even if Appellant's first issue were not waived, it merits no relief. As the trial court noted, there were "minor discrepancies" in King's testimony regarding his hotel stay. *Id.* at 17. However, "the remainder of King's testimony, especially that pertaining to the night of the murder, was largely consistent with his police statement and prior testimony." *Id.*

- 5 -

Additionally, the Commonwealth provided other information that corroborated King's testimony regarding the incident in question. *Id.* at 18-19. Thus, said discrepancies regarding King's hotel stay did not deprive Appellant of a fair trial.

Second, Appellant argues that the trial court's admission of Shantae Coppock's witness statement violated his Sixth Amendment right to confrontation. Appellant's Brief at 61. This argument is also waived. Our review of the certified record indicates that Appellant failed to place a timely objection to such evidence on the record. *See* Pa.R.E. 103(a)(1) (explaining that a claim of error "may not be predicated upon a ruling that admits or excludes evidence unless … a timely objection … appears of record"). To the contrary, Appellant stipulated to its admission.[6] Accordingly, this issue is

---

[6] The following exchange occurred upon the admission of Coppock's statement to the jury.

> **[Commonwealth]**: There are a few stipulations by and between counsel. The first stipulation, ladies and gentlemen, is from a witness by the name of Shantae Coppock. If Ms. Coppock was called to testify, she would testify that she was the wife of Len Coppock, also known as "Coo." She would further testify that Len Coppock was murdered on May 24, 2008. After her husband's death, Ms. Coppock was told by a person named Shane Ladson, who was told by "D[,]" that her husband, Len Coppock, was killed by Najee and Cali. Shane also told Ms. Coppock that "D" told her that Najee and Cali killed an Asian guy in South Philly that night. Ms. Coppock would also say that Len Coppock's best friend was [Appellant] and that she would not remember whether --
>
> **[Defense Counsel]**: Could not remember

- 6 -

waived.[7] **_See_** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Third, Appellant argues that the trial court erred by denying his motion for judgment of acquittal. Appellant's Brief at 9. Not only does Appellant's statement of the question presented violate Pa.R.A.P. 2116(a) (explaining that if the "statement of the question [does not] state concisely the issue to be resolved, expressed in the terms and circumstances of the case" it will not "be considered"), but Appellant utterly fails to develop this argument on appeal. Indeed, the entire section devoted to this issue is left blank. **_See_** Appellant's Brief at 68. Accordingly, Appellant's third issue is waived. **_See Commonwealth v. Luktisch_**, 680 A.2d 877, 879 n.1 (Pa. 1996) (holding that an issue is waived where the defendant failed to develop an argument in his appellate brief and cited no authority).

---

> **[Commonwealth]**: Excuse me. And she could not remember whether [Appellant] was present when Shane was giving her this information about Len Coppock's death. So stipulated, Counsel?
>
> **[Defense Counsel]**: That is so stipulated. Thank you.

N.T. Trial (Jury) Volume 3, 7/26/18, at 243-244. Thus, a reading of this exchange further demonstrates Appellant's failure to timely object to the admission of Coppock's statement as a violation of Appellant's Sixth Amendment right to confront adverse witnesses.

[7] Appellant was required to set forth in his brief the place in the record where the issue was preserved. **_See_** Pa.R.A.P. 2117(c). He failed to do so. Such failure also results in waiver of that issue. **_See_** Pa.R.A.P. 2101.

Lastly, Appellant argues that the trial court abused its discretion when it denied his motion for a new trial. Appellant's Brief at 51. Specifically, Appellant contends that, because the "Commonwealth's case-in-chief reveals that the primary and central witnesses' testimonies are . . . internally inconsistent," the jury's verdict was contrary to the weight of the evidence. *Id.* at 57. Again, Appellant does not identify the place in the record where such testimony was admitted. *See* Pa.R.A.P. 2119(c). Thus, we could find this issue waived. Nonetheless, because we conclude that the jury's verdict was not against the weight of the evidence, we decline to do so.

When considering a challenge to the weight of the evidence offered in support of a criminal conviction, our standard of review is well settled.

> "A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." *Commonwealth v. Clay*, 64 A.3d 1049, 1054–55 (Pa. 2013). "A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." *Id.* at 1055. When a trial court considers a motion for a new trial based upon a weight of the evidence claim, the trial court may award relief only "when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Id.* The inquiry is not the same for an appellate court. Rather, when an appellate court reviews a weight claim, the court is reviewing the exercise of discretion by the trial court, not the underlying question of whether the verdict was against the weight of the evidence. *Id.* at 1054. The appellate court reviews a weight claim using an abuse of discretion standard. *Id.* at 1057.
>
> At trial, the jury was the ultimate fact-finder and the sole arbiter of the credibility of each of the witnesses. "Issues of witness credibility include questions of inconsistent testimony and improper motive." *Commonwealth v. Sanchez*, 36 A.3d 24, 27

- 8 -

(Pa. 2011) (citation omitted). A jury is entitled to resolve any inconsistencies in the Commonwealth's evidence in the manner that it sees fit. *See Commonwealth v. Rivera*, 983 A.2d 1211, 1220 (Pa. 2009) (stating that "the trier of fact, in passing upon the credibility of witnesses, is free to believe all, part, or none of the evidence") (citation omitted).

As noted, inconsistencies in eyewitness testimony are not sufficient to warrant a new trial on grounds that the verdict was against the weight of the evidence. *Clay*, 64 A.3d at 1055.

*Commonwealth v. Jacoby*, 170 A.3d 1065, 1080-1081 (Pa. 2017) (parallel citations omitted).

In rejecting Appellant's challenge to the weight of the evidence, the trial court reasoned as follows.

Here, [Appellant's] weight claim is premised upon the contention that the Commonwealth's eyewitnesses, particularly Ronald King, were not credible. In his post-sentence motion, [Appellant] argued that the testimony of Ronald King, Sharon Jacobs, and Lisa Thomas was not credible because: (1) they were inconsistent; (2) Jacobs and Thomas were drug addicts at the time they witnessed the murder; and (3) Thomas and King received benefits from the government for their testimony.

\*\*\*

As to Ronald King's testimony, [Appellant] points out that King testified that he had been placed in a hotel prior to [Appellant's] preliminary hearing, but later testified that he was not staying in a hotel before the preliminary hearing. At [Appellant's] first trial, the Commonwealth informed the [trial court] that [King] had indeed been placed in a hotel prior to the first preliminary hearing. In addition, King also testified that he and [Appellant's] brother had gotten into an altercation prior to [Appellant's] preliminary hearing, but after being questioned by the prosecutor on that response, changed the timeline of the altercation to after the preliminary hearing.

While it is true that the above line of questioning does reveal minor discrepancies in King's testimony, the remainder of King's testimony, especially pertaining to the night of the murder, was

- 9 -

largely consistent with his police statement and prior testimony. [Specifically,] King testified that he was near Fifth and Carpenter Streets when he saw Gilliard riding toward him on his bicycle. He then heard the sound of gunshots and saw smoke and a green van near Gilliard. King denied ever seeing the actual shot being fired or a gun, but did testify that he made eye contact with [Appellant], who was sitting alone in the rear passenger side of the van and closing the van's door before it sped away. King told police the same version of events in his statement that was taken in May 2013. Moreover, in [Appellant's] second trial, King testified that he was standing alone on the corner of Fifth and Carpenter when he saw Gilliard, heard the gunshots, saw smoke, and then noticed [Appellant] closing the door of the green van. Again, King denied ever seeing the shot being fired or the gun. Finally, at [Appellant's] first trial, although King initially denied seeing anything other than a person's arm in the van when the shooting occurred, after reviewing the video recording of his police interview, as well as his police statement, King recalled that he did see [Appellant's] face.

Furthermore, Lisa Thomas's testimony and Sharon Jacob's police statement largely corroborated King's testimony. King testified that he saw Thomas and Jacobs that evening, and both witnesses admitted that they were at the scene at the time of the murder. Thomas testified that she did not see the shooting, but that she heard the sound of gunshots and then saw a green van and heard its tires [squealing] as it fled the scene. She recognized the van as belonging to her cousin, [Appellant]. While Thomas initially told police, on the day after the shooting, that she did not see any vehicle at the scene, she explained at trial that she gave that response because she was scared. In addition, Sharon Jacobs told detectives that she was standing on Fifth Street when she heard the sound of gunshots and saw a green van drive by. She also told detectives that she recalled seeing [Appellant] drive that van on prior occasions.

While it is true that Jacobs denied providing the above information to detectives and testified that she saw a burgundy, not a green, van, her statement to police was admitted for its truth during her testimony, as a prior inconsistent statement that was signed and adopted by the declarant. *See* Pa.R.E. 803.1(1)(b). It is well established that where a witness at trial recants a statement that [she] made to police, the fact-finder is "free to evaluate both the [witness's] statement to police as well as [her] testimony at trial recanting that statement, and [is] free to believe all, part, or none

- 10 -

of the evidence." ***Commonwealth v. Hanible***, 836 A.2d 36, 39 (Pa. 2003). Such recantations are "notoriously unreliable." ***Commonwealth v. Johnson***, 966 A.2d 523, 541 (Pa. 2009) (internal citations omitted).

The Commonwealth also presented additional evidence that corroborated [the testimony of King and Thomas] and Jacobs's statement. At trial, Officer Klineburger testified that she responded to the scene after the shooting and saw Gilliard on the ground, with his body "intertwined in a bicycle." King testified that after Gilliard was shot, "his bike was sandwiched with his legs." Moreover, Thomas recalled seeing Gilliard bleeding from his head after being shot. The medical examiner testified that Gilliard suffered from a single gunshot wound to his head. In addition, Detective Kelhower testified that he located a traffic citation from February 2010 that was issued to [Appellant] and that the description of the vehicle was a "green SW." The detective explained that SW indicated that the vehicle was either a station wagon or a van. While traffic records also indicated that this vehicle was purchased by [Appellant's] mother in 2009, which was after the murder, the detective explained that [Appellant's] mother had purchased the vehicle at a Parking Authority Auction after the vehicle [was] impounded. While there is no record of the vehicle[']s previous owner, the detective agreed that an owner could avoid multiple fees that the Parking Authority imposes after it impounds a vehicle by instead buying the vehicle back at auction.

Accordingly, the evidence fully supported the jury's verdict, and therefore, the [trial court] did not abuse its discretion in denying [Appellant's] motion for a new trial.

Trial Court Opinion, 4/10/19, at 16-19 (internal citations to the record omitted).

Our review of the certified record reveals that the trial court's assessment enjoys record support. For this reason, we conclude that the trial court properly exercised its discretion in denying Appellant's motion for a new

trial based on the weight of the evidence. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/9/20