J-S30013-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOSEPH SIMMONS | |
| Appellant | No. 2132 EDA 2021 |

Appeal from the Judgment of Sentence Entered June 21, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0001195-2019

BEFORE:  STABILE, J., MCCAFFERY, J. and PELLEGRINI, J.[*]

MEMORANDUM BY STABILE, J.:          **FILED OCTOBER 12, 2022**

Appellant, Joseph Simmons, appeals from his aggregate judgment of sentence of six to twelve years' imprisonment for aggravated assault, firearms not to be carried without a license, carrying firearms on public streets or public property in Philadelphia, possessing instruments of crime, simple assault, recklessly endangering another person, and persons not to possess, use, manufacture, control, sell or transfer firearms.[1]  Appellant contends that the evidence was insufficient to sustain his convictions for carrying firearms without a license and carrying firearms on public streets in Philadelphia.  He also claims the trial court abused its discretion by denying his claim that the verdict was against the weight of the evidence.  We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702, 6106, 6108, and 907, 2701, 2705, and 6105, respectively.

The evidence adduced during Appellant's non-jury trial demonstrates that on July 16, 2018, the victim, Ronald McCutchen, spent his evening on the porch of 1857 East Tioga Street in Philadelphia, Pennsylvania. McCutchen was accompanied by several adults and children, including his friend Charlmane Tripline, Tripline's juvenile daughter, N.T., and Appellant, who had been dating McCutchen's sister, Christina Willis.

Appellant and Willis were not on good terms because Appellant had recently cheated on her. Willis responded by taking Appellant's car keys. On July 16, 2018, Willis was supposed to meet Appellant at 1857 East Tioga Street to return the keys. McCutchen sold marijuana from the porch while Appellant waited for Willis to arrive.

At approximately 8:15 p.m., with multiple witnesses including Tripline and N.T. present on the porch, Appellant and McCutchen argued about money. Appellant shot McCutchen twice in the abdomen and left.

Later that evening, Tripline gave a police statement implicating Appellant in the shooting. The statement was admitted as evidence, and the Commonwealth read it into the record. At the end of the interview, she signed a photograph positively identifying Appellant. She averred in her statement that she knew Appellant because he was Willis' ex-boyfriend. She saw Appellant at three or four parties and cookouts prior to the shooting, and he was with Willis at each event. She stated that Appellant went into the house right before the incident and came back outside with a gun. Appellant told the victim not to move, stated he was not playing, and instructed him to tell

his sister to give Appellant his money. The victim asked what he was talking about, and Appellant shot him twice. Tripline described the gun as a "black nine automatic." N.T., 3/5/21, at 84. According to her statement, after the second shot, Appellant chased the victim down the street and fired two more shots.

Tripline also identified Appellant at trial as the shooter. She was initially uncertain because his face at trial was obscured by a Covid face mask. When Appellant removed his mask, Tripline identified him by nodding in his direction and stating, "He is sitting right there." *Id.* at 67–68.

Tripline's daughter, N.T., testified and gave a consistent version of events to that of her mother. She was eight years old at the time of the incident and eleven at the time of trial. The defense stipulated to her competence. While N.T. was unable to identify Appellant in open court, she remembered a detective showing her a photo array shortly after the shooting. A detective showed her multiple photographs and she selected the third photograph as the shooter. The detective said N.T. appeared very understanding about the photo array process. He confirmed that N.T. immediately selected and signed the third image. Detective Miles, who prepared the photo array, confirmed that the image was Appellant. N.T. did not have any conversations with her mother about the incident on the porch prior to making the identification.

When police officers arrived at the shooting scene, the victim approached them with two visible gunshot wounds in his stomach. He was

transported to Temple University Hospital and treated.  Other officers arrived and located two 9-millimeter Luger fired cartridge casings on the porch of 1857 East Tioga Street.

The victim, who had not been cooperative with police in the aftermath of the shooting, testified as a defense witness.  He claimed he did not know who shot him because he could not see his assailant.  He confirmed there were other people on the porch at the time.  He asserted he did not learn about Appellant being accused until he received a subpoena one week before trial.

The parties stipulated that Appellant did not have a valid license to carry a firearm.  There was also a stipulation that Appellant was ineligible to carry a firearm under 18 Pa.C.S.A. § 6105 based on a previous conviction in Virginia.  The parties also stipulated that Appellant's mother would testify to his character for peacefulness and that Tripline had a prior conviction for *crimen falsi*.

On March 9, 2021, the court found Appellant guilty of all charges other than attempted murder and deferred sentencing until June 21, 2021.  On June 15, 2021, Appellant filed a motion challenging the verdicts as being against the weight of the evidence.  On June 21, 2021, the court denied the motion and imposed sentence.

Appellant filed post-sentence motions challenging the weight of the evidence, which the court denied.  Appellant filed a timely appeal, and both Appellant and the court complied with Pa.R.A.P. 1925.

Appellant raises two issues in this appeal:

Is the evidence sufficient, as a matter of law, to convict [Appellant] of the crimes of possessing a firearm without a license and carrying a firearm in Philadelphia as set forth in 18 Pa.C.S.A. §§ 6106 and 6108 of the Crimes Code where the evidence of record does not establish that the item allegedly used by [Appellant] had a barrel length or overall length which satisfied the definition of firearm as that term is defined in 18 Pa.C.S.A. § 6102?

Is the verdict of guilty against the weight of the evidence and so contrary to the evidence that it shocks one's sense of justice under the circumstances of this case?

Appellant's Brief at 7.

Appellant first challenges the sufficiency of the evidence underlying his convictions for weapons charges under Sections 6106 and 6108 of the Crimes Code. "Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Murray**, 83 A.3d 137, 151 (Pa. 2013).

When reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. **Commonwealth v. Diamond**, 83 A.3d 119, 126 (Pa. 2013). "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." **Commonwealth v. Colon-Plaza**, 136 A.3d 521, 525–26 (Pa. Super. 2016). It is within the province of

the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. ***Commonwealth v. Tejada***, 107 A.3d 788, 792–93 (Pa. Super. 2015). The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. ***Commonwealth v. Crosley***, 180 A.3d 761, 767 (Pa. Super. 2018). As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. ***Commonwealth v. Rogal***, 120 A.3d 994, 1001 (Pa. Super. 2015).

Section 6106 and Section 6108 are part of the Pennsylvania Uniform Firearms Act, 18 Pa.C.S.A. §§ 6101-6128. Section 6106 makes it a crime for "any person" to carry "a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license ...." 18 Pa.C.S.A. § 6106(a)(1).

Section 6108 provides:

No person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless:

(1) such person is licensed to carry a firearm; or

(2) such person is exempt from licensing under section 6106(b) of this title (relating to firearms not to be carried without a license).

18 Pa.C.S.A. § 6108.

The Uniform Firearms Act defines "firearm" as "[a]ny pistol or revolver with a barrel length less than 15 inches ... or any pistol, revolver, rifle or shotgun with an overall length of less than 26 inches." 18 Pa.C.S.A. § 6102. The Commonwealth may prove the length of the barrel with circumstantial evidence. **Commonwealth v. Jennings**, 427 A.2d 231, 235 (Pa. Super. 1981) (length of weapon can be determined from what an object "looks like, feels like, sounds like or is like"). For example, in **Commonwealth v. Rozplochi**, 561 A.2d 25 (Pa. Super. 1989), during a bench trial,

> [one eyewitness] testified that appellant initially concealed the weapon inside a manila envelope. She described the envelope as "about this high" and "not too wide". Although the record before us does not reveal the length of the envelope, the judge would have been able to estimate this length by observing [the eyewitness's] hand motions when she described the envelope as "about this high". The judge could then have concluded that the length of the gun barrel was less than the length of the envelope. In addition, the judge also heard [a second eyewitness] testify at the robbery trial that appellant's weapon was a "small black gun" ...

*Id.* at 31. We reasoned that the evidence satisfied the Uniform Firearms Act's definition of barrel length:

> Although the finder of fact did not observe the gun itself, the finder of fact observed a witness who indicated the dimensions of the envelope in which the gun was contained. The finder of fact was a judge and as such is presumed to know the law. **See Commonwealth v. Hunter**, 554 A.2d 550, 558 (Pa. Super. 1989). Moreover, none of the evidence of record indicates that the gun had an exceptionally long barrel length and appellant has never offered to come forward with any evidence which would show that the gun was not a firearm.

*Id.* at 31-32.

- 7 -

Here, as in **Rozplochi**, the Commonwealth introduced sufficient circumstantial evidence of barrel length. N.T. testified that she saw the gun during the shooting, and she described it as "small and black." N.T. 3/5/21, at 117. She also testified she saw the shooter pull the gun from his waistband before shooting the victim. It is a reasonable inference that a weapon that is two feet and two inches in length or greater would be extremely unlikely to be concealed in the waistband of one's pants. This, combined with N.T.'s testimony that the gun was "small and black," entitled the court to infer that the gun was shorter than two feet and two inches in length. **See Commonwealth v. Biggs**, 248 A.3d 455, 2021 WL 21767, *5 (Pa. Super. 2021) (memorandum) (evidence that defendant pulled his gun from waist of his pants sufficient for jury to infer that gun possessed had barrel length of less than 15 inches).[2]

Tripline's testimony also corroborated the gun length. While she initially testified that she did not see the gun, N.T. 3/5/21, at 68, the Commonwealth introduced her prior statement in which she told detectives that she saw it. **Id.** at 80–87. She confirmed that she saw the gun, a "black nine automatic." **Id.** at 84. She also told detectives that she looked up after Appellant fired the first shot, saw him holding the gun in his hand, and saw him fire a second shot. **Id.** at 81. Her description of the gun as a "black nine automatic" that

---

[2] **See** Pa.R.A.P. 126(b) (unpublished non-precedential memorandum decisions of Superior Court filed after May 1, 2019 may be cited for their persuasive value).

permitted the reasonable inference that she was describing a black nine millimeter handgun. Her assertion that Appellant was able to hold and fire the gun using one hand rather than two supports the same inference. ***See Commonwealth v. King***, 251 A.3d 1266, 2021 WL 1157989, *4 (Pa. Super. 2021) (evidence was sufficient to prove barrel length where an eyewitness testified the defendant was holding the firearm with one hand, seemingly waving it around, and a trooper characterized the firearm as a "pistol"). Further corroborating her testimony was the physical evidence discovered at the scene, two 9-millimeter Luger fired cartridge casings on the porch. ***Id.***

By contrast, there was no evidence tending to suggest that the gun was exceptionally long. ***Rozplochi***, 561 A.2d at 31-32 (noting that there was no evidence indicating gun had an exceptionally long barrel length).

Accordingly, Appellant's challenge to the sufficiency of the evidence relating to the barrel length of his firearm fails.

In his second argument, Appellant contends that the trial court abused its discretion by find that the weight of the evidence supports his convictions. We hold that this ruling was a proper exercise of the court's discretion.

"To grant a new trial on the basis that the verdict is against the weight of the evidence, ... the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." ***Commonwealth v. Childs***, 63 A.3d 323, 327 (Pa. Super. 2013). "On review, an appellate court does not substitute its judgment for the finder of fact and consider the underlying question of whether the verdict is against the weight of the

evidence, but, rather, determines only whether the trial court abused its discretion in making its determination." ***Commonwealth v. Lyons***, 79 A.3d 1053, 1067 (Pa. Super. 2013). A new trial should not be granted based on a "mere conflict" in the testimony, or because a different judge faced with the same facts would have arrived at a different conclusion. ***Commonwealth v. Widmer***, 744 A.2d 745, 752 (Pa. 2000).

Appellant claims that the verdict is shocking because Tripline merely "guessed" during trial that he was the shooter. Appellant's Brief at 35. Appellant mischaracterizes Tripline's testimony. Trial took place during the COVID-19 pandemic, and Appellant was wearing a face mask. When Tripline was asked whether she saw the shooter in court, she initially said, "I guess that is him. I can't really tell because I can't see his face." N.T. 3/5/21, 67. The court asked Appellant to lower his mask, at which point Tripline readily identified him, "He is sitting right there." ***Id.*** Her in-court identification was corroborated by her pre-trial statement in which she identified Appellant as the shooter. She stated during the interview that she knew Appellant from his relationship with the victim's sister, Willis. ***Id.*** at 83. At the end of her interview, she signed a single photo positively identifying Appellant as the assailant. ***Id.*** at 87. The trial court, as finder of fact, was free to weigh "both [her] statement to police as well as [her] testimony at trial . . . and free to believe all, part, or none of the evidence presented." ***Commonwealth v. Hanible***, 836 A.2d 36, 39 (Pa. 2003). We cannot second-guess the court's decision to credit this evidence.

- 10 -

Appellant also claims that Tripline's memory was "fuzzy" because she was drinking on the day of the incident. Appellant's Brief at 37. Once again, Appellant misconstrues Tripline's testimony. Tripline testified that she was not drinking enough to blur her memory. N.T. 3/5/21, at 102–03. Detective Bender noted that she did not appear to be intoxicated or inebriated at all when he interviewed her later that night. *Id.* at 129–132. Tripline testified that the details of the incident were fresher in her mind when it occurred in 2018 than when she testified in March of 2021. *Id.* at 103–04. She also acknowledged that she did not want to be present in court on March 5, 2021. *Id.* at 64. Indeed, at one point when she claimed an inability to remember, defense counsel questioned her competence. *Id.* at 76–77. The trial court responded, "She is competent. You can cross-examine her. Let's not use excuses when people don't want to testify. She has been very clear about what she saw and what she didn't see so far." *Id.* at 77. It was within the court's discretion to balance all of this evidence and credit the evidence pointing to Appellant as the shooter.

Appellant's weight argument also suffers from the fact that Tripline's daughter, N.T., corroborated Tripline's identification of Appellant as the shooter. Prior to trial, N.T., then eight years old, identified Appellant as the shooter. N.T. 3/5/21, at 70, 109. Although N.T. was unable to identify Appellant at trial, she remembered a detective showing her a photo array on the evening of the shooting. *Id.* at 116, 121–22. She selected the third photograph as the shooter. *Id.* at 121–22. Importantly, N.T. confirmed she

did not discuss the incident with her mother prior to making the identification. The detective who sat with N.T. during the array confirmed she selected the third photograph and noted she appeared very understanding about the photo array process. *Id.* at 25, 26. The detective who prepared the array confirmed the third photograph was Appellant.[3] *Id.* at 139. Once again, the court had the discretion to accept N.T.'s pretrial identification as evidence of Appellant's guilt.

Appellant refers us to *Commonwealth v. Kloiber*, 106 A.2d 820 (Pa. 1954), in which our Supreme Court held that

> where the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify defendant on one or more prior occasions, the accuracy of the identification is so doubtful that the Court should warn the jury that the testimony as to identity must be received with caution.

Appellant's Brief at 36-37 (citing *Kloiber*, 106 A.2d at 826-27). To begin, *Kloiber* is not applicable. *Kloiber* defines the circumstances in which the court must instruct the jury to view a witness's identification with caution. In this case, trial was non-jury, so *Kloiber* is not applicable. Nonetheless, Appellant attempts to bolster his reliance on *Kloiber* by arguing that the

---

[3] While Appellant claims in his brief that N.T. was not competent to testify during trial, Appellant stipulated to her competency during trial. *Id.* at 113. The only person who objected to N.T.'s competency was her mother, Tripline, who strenuously argued that N.T. was incompetent due to her concern of retaliation by Appellant. *Id.* at 111 (Tripline's statement to court that "you don't know what he['s] capable of").

- 12 -

verdict was against the weight of the evidence because the witnesses were "not positive as to [Appellant's] identity." *Id.* at 827. As discussed above, however, the weight of the evidence demonstrates that (1) Tripline *was* positive about Appellant's identity, (2) N.T. was positive when police detectives interviewed her on the night of the incident, and (3) both Tripline and N.T. were in a position to clearly observe Appellant shoot McCutchen.

Next, Appellant argues that Tripline's and N.T.'s identifications were undermined by the victim, McCutchen, who testified as a defense witness. Appellant's Brief at 39. McCutchen testified that Appellant was not his assailant, but he admitted he did not know who shot him. N.T. 3/8/21, at 55. The trial court was of course not obligated to credit McCutchen's version of events over other witnesses. At most, this created a "mere conflict" in the testimony, **Widmer**, 744 A.2d at 752, which the court had the authority to resolve.

Appellant argues the trial should have ascribed greater weight to both Tripline's *crimen falsi* convictions and Appellant's proffered reputation evidence from his mother. The mere existence of *crimen falsi* evidence did not require the court to acquit Appellant. **Commonwealth v. Murphy**, 134 A.3d 1034, 1039–40 (Pa. 2016) (rejecting challenge to weight of the evidence where jury was made aware of Commonwealth witness's contact with criminal justice system, including *crimen falsi* convictions); **Commonwealth v. Dunkins**, 229 A.3d 622, 634 (Pa. Super. 2020) (weight claim meritless where

prosecution witness had *crimen falsi* conviction because it was exclusively within jury's province as fact-finder to assess credibility of prosecution witnesses and weigh evidence at trial). Similarly, it was within the trial court's province to weigh Appellant's proffered reputation evidence as it saw fit. ***Commonwealth v. Price***, 616 A.2d 681, 685 (Pa. Super. 1992).

Finally, Appellant argues that there was no physical, forensic, or video evidence inculpating him. Appellant's Brief at 40. Such evidence, however, is not necessary to convict. The trial court found "enough consistencies within the testimonies of both [] Tripline and N.T. to find them credible and conclude that even in the absence of physical, forensic, or video evidence inculpating Appellant, he was the individual who shot McCutchen." Trial Court Opinion, 4/12/22, at 19.

For these reasons, Appellant's challenge to the weight of the evidence does not entitle him to relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/12/2022